UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PIGGY PUSHERS, LLC,

        Plaintiff,

v.

SKIDDERS FOOTWEAR, INC.,

        Defendant.
_____/

File No.  1:10-CV-644

HON. ROBERT HOLMES BELL

## **O P I N I O N**

Plaintiff Piggy Pushers, LLC is the owner of U.S. Patent No. 6,385,779 ("the '779 patent") entitled "Infant Sock."  In this action Plaintiff claims that Defendant Skidders Footwear, Inc.'s SKIDDERS® brand SkidProof Shoes ("Accused Product") infringes the '779 patent . This action is currently before the Court on Defendant Skidders Footwear Inc.'s motion for summary judgment. (Dkt. No. 68.)  For the reasons that follow, Skidders' motion will be granted.

## I.

Defendant Skidders contends that it is entitled to summary judgment because the Skidders product accused of infringement does not infringe any of the claims at issue in Plaintiff Piggy Pushers, LLC's '779 patent as a matter of law because the Accused Product is a shoe, not a sock.

The Federal Rules of Civil Procedure require the Court to grant summary judgment

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "is appropriate in patent cases as in any other case where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Howes v. Med. Components, Inc.*, 814 F.2d 638, 643 (Fed. Cir. 1987). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). "Summary judgment of noninfringement may only be granted if, after viewing the alleged facts in the

light most favorable to the nonmovant and drawing all justifiable inferences in the nonmovant's favor, there is no genuine issue whether the accused device is encompassed by the patent claims." *Novartis Corp. v. Ben Venue Laboratories, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001)

Patent infringement analysis involves two steps: "(1) claim construction to determine the scope and meaning of the claims asserted to be infringed, and then (2) a determination of whether the properly construed claims encompass the accused device." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999); *see also Markman v. Westview*, 517 U.S. 370, 384 (1996) (describing the two elements of a simple patent case as construing the patent and determining whether infringement occurred). The Court completed the first step of construing the claims in its opinion and order of March 5, 2012. (Dkt. Nos. 63, 64.) With respect to the second step, the burden is on the patentee to prove infringement by showing the presence of every element or its equivalent in the accused device. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011).

The patent claims at issue in this lawsuit are claims 1, 3, 5-8, 10, 11, and 13. (Dkt. No. 63, Op. at 1.) Of these, only claims 1 and 13 are independent claims. Claims 3, 5-8, 10 and 11 depend from claims 1 and 13, which means they "contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." 35 U.S.C. § 112(d). Because a dependent claim is necessarily narrower in scope than the independent claim from which it depends, it is axiomatic that "if an accused infringer does

not infringe an independent claim, it cannot infringe claims that depend on that independent claim." *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 984 (Fed. Cir. 1999) (citing *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir.1989)).

During the claim construction phase, this Court determined, among other things, that independent claims 1 and 13 of the '779 patent are limited to a "sock," and construed the term "sock" to mean "a knitted or woven covering for the foot." (Dkt. No. 63, Op. at 6-7; Dkt. No. 64, Order.) The Court noted that the Background section of the '779 patent specifically distinguishes the invention from shoes: "Dressing the infant with shoes is one solution to this problem [slipping], but it is not always desirable, and is often difficult, to put shoes on an ambulatory infant." '799 patent, col. 1, ll. 22-25. The Court further determined that "[n]othing in the claim language or the specifications suggests that the inventor intended 'sock' to mean anything other than what a person of ordinary skill in the art of footwear would understand it to mean." (Dkt. No. 63, Op. at 7.)

## II.

Defendant contends it is entitled to summary judgment of non-infringement because the patent applies only to socks, and Defendant contends its product is a shoe, not a sock. In support of this contention, Defendant has presented evidence from Michael Matalon, the president of Defendant Skidders, and from Caroline de Baëre, an expert in the footwear industry.

The Accused Product has a thick, durable, outsole, which is characteristic of a shoe, not a sock.  (Matalon Decl. ¶ 16; de Baëre Decl. ¶ 16.)

The Accused Product has a separate insole of fixed size and shape.  (Matalon Decl. ¶ 9.)  An insole is characteristic of a shoe.  Socks do not have separate insoles.  (de Baëre Decl. ¶ 11 (stating that it is "common knowledge" in the footwear industry that "socks never have separate insoles").)

The Accused Product is designed for use in outdoor environments to guard the foot against sharp objects and rough surfaces.  It is designed and meant to be worn by a child outdoors without the need for additional foot protection.  (Matalon Decl. ¶ 10 & Ex. 4.)  Socks are not generally designed to be worn outdoors without additional foot protection.  (de Baëre Decl. ¶ 12.)

The Accused Product is configured such that one cannot wear it within a shoe.  (Matalon Decl. ¶ 11.)  A sock is designed to be worn within a shoe.  (de Baëre Decl. ¶ 13.)

The Accused Product has a substantially fixed interior size and shape.  (Matalon Decl. 15.)  This is characteristic of a shoe, not a sock.  (de Baëre Decl. ¶ 15.)  A sock is designed to stretch when placed on the foot.  (de Baëre Decl. ¶ 20.)  Children grow out of the Accused Product quickly because of its fixed size.   (Matalon Decl. ¶ 21; de Baëre  Decl. ¶ 21.)  The Accused Product is accordingly offered in a variety of sizes that match shoe sizes for children of 12 months, 18 months, and 24 months.  (Matalon Decl. ¶ 20.)  Because socks stretch and conform to the foot, they can accommodate a much wider range of foot sizes, and are sold

5

in wider size ranges, such as 0-12 months, and 12-24 months. (Matalon Decl. ¶ 20; de Baëre Decl. ¶ 21.)

The Accused Product is sold in left-right pairs. (Matalon Decl. ¶ 17.) The two shoes that make up a pair are asymmetric, and the bottom of each product is marked to indicate whether it is for the left foot or right foot. Socks are designed to be worn on either foot. (de Baëre Decl. ¶ 17.)

Defendant has only marketed and sold the Accused Product as a shoe. (Matalon Decl. ¶ 17.) The Accused Product's packaging identifies the product as "SkidProof Shoes." (Matalon Decl. Ex. 1.) The advertising provides that the Accused Product is "an exciting footwear collection for kids on the go, both indoors and outdoors, . . . providing the child with the freedom of movement, traction and protection." (Matalon Decl. Ex. 4.)

U.S. Customs classifies the Accused Product as a shoe, not a sock, and as a result, Skidders must pay the higher duty rate applicable to shoes, and not the lower rate applicable to socks. (Matalon Decl. ¶ 16.)

Plaintiff has raised few challenges to the opinion evidence presented in Defendant's motion concerning the nature of the Accused Product or the general characteristics of shoes and socks, except to show that some socks are sold in asymmetrical left-right pairs, and to object to Defendant's definition of "conform" as too restrictive.[1] Instead, Plaintiff contends

---

[1] The Court will discuss the conformity argument in Part III below.

that the shoe-like aspects of the Accused Product are irrelevant because a deconstruction of the Accused Product reveals that it is comprised of a sock member and a gripper member, and the sock member is comprised entirely of knitted or woven material that covers the foot. (Tonkel Decl. ¶ 20 ("In my opinion, even if Ms. de Baere's arguments were well-founded, they have no relevance to whether the accused product is a knitted or woven covering for the foot.").) Plaintiff contends that the Accused Product is a knitted or woven covering for the foot because the Accused Product comprises a covering for the foot that is entirely fabric. Plaintiff's footwear expert, Raymond Tonkel, removed the rubber outsole from fabric portion of the Accused Product, and showed that the fabric portion was, without question, a sock. Tonkel has given his opinion that, after disconnecting the gripper member from the sock member, it was apparent that the Accused Product is "a knitted or woven covering for the foot." (Tonkel Decl. ¶¶ 15, 17.)

Tonkel's opinion would not help the trier of fact to understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a). All Tonkel has shown is that the sock portion of the Accused Product, when detached from the outsole or gripper member, is a knitted or woven material that covers the foot. There is no dispute that the Accused Product consists of a sock that has been bonded to a rubber outsole. But the Accused Product consists of the two parts, the sock and the outsole, bonded together. By destroying the Accused Product, and separating the sock member from the outsole, Tonkel's opinion misrepresents the manner in which the accused product is manufactured, sold, and used.

Tonkel's opinion does not create a material issue of fact for trial as to whether the Accused Product is a sock.

Plaintiff contends that Defendant's own documents support Plaintiff's contention that the Accused Product is a sock. Plaintiff references a number of occasions where Defendant has used the word "sock" in describing its product. For example, Plaintiff has presented documents where the Accused Product has been described as "the sock with rubber outsole," "Sock shoes are a walking shoe and comfy sock in one," "sock-like shoes with rubber soles" and a "sock-like characteristic," "Skidders Shoe Socks," "the perfect mix of shoes and socks," "Walking Shoe + Comfy Sock in One," and "hybrid sock-shoe design." (Drake Decl. Exs. 4-9, 11-12.) Plaintiff also presented evidence that when the Accused Product was first sold, its president admitted that retailers could not decide whether to put them in the hosiery department or the shoe department. (Drake Decl. ¶ 10, Ex. 7.)

Plaintiff has shown, at best, that there is a question of fact as to whether the Accused Product is a hybrid shoe and sock. The patent, however, does not address a hybrid sock-shoe. It addresses a sock. There is simply no evidence from which a reasonable jury could conclude that Defendant's product is a sock.

Plaintiff also contends that Defendant's argument that the Accused Product is not a sock is inconsistent with Defendant's prior positions in this litigation. Specifically, Plaintiff notes that, in the joint chart disclosing claims and defenses, Defendant asserted that the '779 patent is invalid as anticipated by Douglass, U.S. Patent No. 622,614 for "Bathing Stocking."

8

Douglass is a bathing stocking with a rubber sole. Plaintiff contends that Defendant's position with respect to Douglass is, necessarily, that the invention described in Douglass is a sock not a shoe, yet the Douglass invention has the same characteristics that Defendant relies on to show that its product is not a sock: it has a durable sole, is designed for outdoor environments, and cannot be worn in a shoe.

Defendant's reliance on Douglass does not invalidate its arguments that the Accused Product is not a sock. Contrary to Plaintiff's contentions, Defendant does not necessarily contend that Douglass is a sock. Defendant's invalidity contention with respect to Douglass is that if the '779 patent is construed in such a way that it is broad enough to cover the Accused Product, then it follows that Douglass would invalidate the '779 patent. Likewise, if the Douglass stocking is outside the scope of the claim, then the Accused Product is also outside the claim.

The evidence, viewed in the light most favorable to Plaintiff, shows at best that the allegedly infringing product is a hybrid shoe/sock. The '779 patent, however, does not apply to hybrid shoe/socks. It applies to a sock. No reasonable juror could conclude that the Accused Product is a sock as defined in the patent. On this basis alone, Defendant is entitled to summary judgment.

### III.

Defendant has presented an alternative and independent basis for granting summary judgment. Defendant contends that it is also entitled to summary judgment because the

Accused Product does not meet the limitation that it "conform to the foot of an infant learning to crawl."

The '779 patent recites the requirement of "a sock member sized to fit a foot of an infant learning to crawl." The specifications provide that "The sock member **11** is preferably constructed of a natural fabric material, such as cotton, or a synthetic fabric material, such as Lycra or spandex, or a combination of such materials." '779 patent, Col. 2, ll. 45-48. "The upper surface **18** and the lower surface **16** preferably consist of the same amount of fabric material so as to ensure a good fit on an infant's foot." '779 patent, Col. 2, ll. 49-51. In the *Markman* opinion, the Court construed "sock" to mean "a knitted or woven covering for the foot." The Court construed "a sock member sized to fit a foot" as "a sock member of a size such that it conforms to the foot." (Dkt. No. 64 at 2.)

Defendant has presented evidence that the Accused Product has a rugged, durable outsole that is molded to the knitted material such that the outsole defines the shape and contour of the product. (de Baëre Decl. ¶ 19.) The exterior toe surface and exterior lower surface of the sock member does not conform to the infant's foot because they are molded to a fixed shape and maintain that shape. (*Id.*) They maintain that shape whether they are being worn or not. A sock is designed to stretch when placed on the foot in order to conform to the foot. The Accused Product has a fixed-in-shape outsole and interior which is designed to be wider and longer than the wearer's foot. These features prevent the Accused Product from conforming to the wearer's foot. (de Baëre Decl. ¶ 20.)

In response, Plaintiff has presented its expert's opinion that the Accused Product does conform to the foot because when the sock member of the Accused Product is disconnected from the gripper member, the toe surface and bottom surface of the sock member conformed to an infant's foot.  (Tonkel Decl. ¶¶ 16, 22.)  This expert testimony is not sufficient to create an issue of material fact for trial.  Tonkel's showing that the sock member of the Accused Product, when detached from the outsole or gripper member, conforms to the foot, is irrelevant.  Tonkel had to destroy the Accused Product in order to separate the sock from the rubber outsole.  It is not proper to consider the attributes of the sock member separately from the gripper member.  The patent addresses one item, a sock, that is comprised of both the sock member and gripper member.  By taking the sock apart from the rubber sole, the expert was not considering the accused product, but a separate product, a cannibalization of the Accused Product.  This is a different product than what Defendant is offering for sale.  As noted in Part II above, Tonkel's opinion misrepresents the manner in which the Accused Product is manufactured, sold, and used.  It is not a proper comparison for infringement purposes.

Tonkel has also given his opinion that "the sock member of the accused product conforms to the foot even when it is connected to the gripper member of the accused product."  (Tonkel Decl. ¶ 26.)  According to Tonkel, Defendant's expert applies the term "conform" too restrictively.  Tonkel states that footwear does not have to stretch when worn on a foot to be said to conform.  In support of this contention, Tonkel notes even shoes are

11

understood in the trade to conform to a foot evn though there are gaps between the inside surfaces of the footwear and the foot.  (Tonkel Decl. ¶¶ 25, 26.)

Defendant's expert's opinion related to the meaning of "conform" as it is used in this patent for an infant sock, not as the term might be used in discussing shoes.  Tonkel did not suggest that the toe surface and bottom surface of the sock member conforms to the foot in the manner that a sock conforms to a foot when it is still attached to the rubber outsole.

The Court concludes that any reasonable jury would find that because the sock member of the Accused Product is bonded to a rigid rubber sole, the sock portion of the Accused Product does not conform to the foot in the same way as a sock would conform to the foot.

**IV.**

Plaintiff has not met its burden of showing that every limitation of the '779 patent is found in the Accused Product.  Because the Accused Product is not a sock, and, independently and alternatively, because the Accused Product does not conform to the foot of an infant learning to crawl, the Accused Product does not infringe the '779 patent as a matter of law.  Accordingly, summary judgment will be granted in favor of Defendant Skidders.  An order and judgment consistent with this opinion will be entered.


Dated: <u>November 2, 2012</u>                              /s/ Robert Holmes Bell                       
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE